UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| LUCINDA KAYE GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 6:20-CV-104-JMH |
| v. | ) | |
| | ) | **MEMORANDUM** |
| | ) | **OPINION and ORDER** |
| KILOLO KIJAKAZI, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

Plaintiff Lucinda Kaye Griffin seeks judicial review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (Act). Fully briefed [DE 16; DE 20; DE 21], the matter is ripe for review.

The administrative law judge (ALJ) recognized that Plaintiff was significantly limited due to conditions arising from her morbid obesity and diabetes. To address these conditions, the ALJ limited Plaintiff to a restricted range of sedentary work, the least-demanding exertional level of work. However, the ALJ found that Plaintiff's reports of more extreme limitations were inconsistent with objective medical evidence, the effectiveness of her

conservative treatment, which Plaintiff sometimes failed to follow, and her relatively robust daily activities. The ALJ likewise found that an opinion by Plaintiff's podiatrist that suggested more significant limitations was inconsistent with the aforementioned objective medical evidence, including the podiatrist's own examination findings.

## I. STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157. The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of district court than the "clearly erroneous" standard that governs appellate review of district court fact-finding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999). Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). It is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154

(internal quotation omitted). A court may not try the case *de novo,* resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

## II. MEDICAL EVIDENCE

Plaintiff was 44 years old in March 2016, when she claimed that she became disabled due to conditions arising from her morbid obesity and resultant type 2 diabetes, including Charcot foot[1], vision impairment (diabetic retinopathy), and nerve injury (diabetic neuropathy). *See* [Tr. 24, 397, 401-02]. Plaintiff saw podiatrist Dr. Pamela Jensen-Stanley in 2014, after she was diagnosed with type 2 diabetes. [Tr. 580]. Dr. Jensen-Stanley prescribed diabetic shoes and customs inserts. *See* [Tr. 580-81]. In early 2015, providers discovered a fracture in Plaintiff's right mid-foot area. [Tr. 543, 559]. Shortly thereafter, Dr. Jensen-Stanley observed a rocker bottom deformity of her right foot and placed her in a total contact cast. [Tr. 592]. Plaintiff returned

---

[1] "Charcot foot is a condition causing weakening of the bones in the foot that can occur in people who have significant nerve damage (neuropathy). The bones are weakened enough to fracture, and with continued walking, the foot eventually changes shape. As the disorder progresses, the joints collapse and the foot takes on an abnormal shape, such as a rocker-bottom appearance."

to work in mid-2015 and worked until March 5, 2016, which is when she claims she became disabled. *See* [Tr. 605, 54].

Plaintiff saw Dr. Jensen-Stanley for her foot conditions and advanced practice registered nurse Timothy Poynter, her primary care provider, for her diabetes during the relevant period. *See* [Tr. 692, 682]. Dr. Jensen-Stanley generally recorded diminished sensation in both feet, rocker bottom deformity in one or both feet, unstable and weak ankles, and pain with range of motion in the left foot. *See* [Tr. 693, 688, 727, 723, 720, 805, 802, 799, 796, 793, 788, 785, 782, 779, 776, 772, 769, 764, 816, 1020, 1016, 1013, 1008, 1005, 1002, 999, 996, 1094]. She opined in mid-2017 that Plaintiff could not "work an ambulating job," needed to elevate her legs above her heart to control fluid build-up (edema) and could walk only short distances. [Tr. 765, 817]. Mr. Poynter, on the other hand, often recorded no edema, and he rated her diabetes as "controlled" on several occasions. *See* [Tr. 683, 738, 736, 1088, 1086, 1083]. In 2016, State agency medical consultants Dr. Marcus Whitman and Dr. Diosdado Irlandez reviewed the record to evaluate Plaintiff's limitations. [Tr. 83-86, 115-19]; *see also* 20 C.F.R. § 404.1513a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation"). Both doctors agreed that she had abilities consistent with a range of sedentary work. [Tr. 83-86, 115-19]; *see also* 20 C.F.R. § 404.1567(a) (defining sedentary work).

In early 2017, Plaintiff saw optometrist Dr. Harvey Schleter for a diabetic eye examination. [Tr. 808]. While she had diabetic retinopathy, her visual acuity was 20/20 in each eye. [Tr. 809]. Dr. Schleter recorded similar findings later that year and in 2018. [Tr. 994, 989]. In late 2018, Plaintiff underwent laser treatment for a hemorrhage of the vitreous fluid in her eyes. [Tr. 984, 1068-80].

Plaintiff began seeing endocrinology specialists for her diabetes in mid-2017. [Tr. 756, 863]. She displayed reduced sensation in her feet but normal gait, station, muscle strength, and tone. [Tr. 757]. She reported significant improvement in her diabetes later that year. [Tr. 1062, 1090]. In mid-2018, although Plaintiff's diabetes was uncontrolled, she walked normally. [Tr. 1046, 1037]. Later that year, her diabetes came under better control, and she reported feeling better overall. *See* [Tr. 1085]. She was observed to walk normally in late 2018. [Tr. 1029].

### III. DISCUSSION

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims. [Tr. 18-25]; *see* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found at step three that Plaintiff's impairments did not meet or medically equal a per se disabling impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings). [Tr. 19]. Between steps three and four, the ALJ assessed Plaintiff's residual

functional capacity (RFC), finding that she could do a restricted range of sedentary work. [Tr. 19-20]; *see also* 20 C.F.R. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(a) (defining sedentary work). At step five, the ALJ found that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy. [Tr. 24-25]. The ALJ thus concluded that Plaintiff was not disabled. [Tr. 25].

Plaintiff sought Appeals Council's review of the ALJ's decision. As part of her request that the Appeals Council review the ALJ's decision, Plaintiff submitted an undated letter from Dr. Jensen-Stanley opining that she was extremely limited. [Tr. 2; Tr. 75-76]. The Appeals Council found that this evidence did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." [Tr. 2]. Plaintiff does not challenge that conclusion.

Plaintiff claims that her foot condition met the requirements of a listed impairment. The listings describe impairments that the agency considers severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. § 404.1525(a). Plaintiff bore the burden at step three of demonstrating that her impairments met a listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). This was a high burden. "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical

criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, the ALJ found that Plaintiff's impairments did not meet listing 1.02. [Tr. 19]. Plaintiff argues that the ALJ should have found that her "foot condition and rocker-bottom deformity" met listing 1.02A. [DE 16, at 10-11. But the dysfunction contemplated by listing 1.02A must be in a weight-bearing joint, such as a hip, knee, or ankle. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A. Plaintiff's Charcot foot and rocker-bottom deformity were in her feet—not a joint—and thus, by definition, could not meet listing 1.02A. *See id*. Although Plaintiff points to ankle instability, she ignores the requirement of listing 1.02 that any instability be documented by "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *Id.* There is no radiographic evidence of joint space narrowing, bony destruction, or ankyloses in either ankle joint. *See id.*

Moreover, the evidence of Plaintiff's ability to ambulate effectively was mixed. Although Plaintiff references her purported use of a walker and a wheelchair, the ALJ recognized that providers throughout the relevant period observed that she had normal gait and did not use an assistive device [Tr. 22]; *see also, e.g.*, [Tr. 790, 757, 962, 1046, 1037, 1029]. Without evidence that Plaintiff

7

was unable to ambulate effectively for 12 months or longer, she
could not meet the listing. *See* 20 C.F.R. § 404.1525(c)(4) ("For
some listings, we state a specific period of time for which your
impairment(s) will meet the listing. For all others, the evidence
must show that your impairment(s) has lasted or can be expected to
last for a continuous period of at least 12 months."). In short,
more than the requisite "mere scintilla" of evidence supports the
ALJ's step-three finding that Plaintiff's foot and ankle
conditions did not meet listing 1.02.

Between steps three and four, an ALJ assesses a claimant's
RFC, which is the most she can do despite her impairments. 20
C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 404.1546(c). The
claimant bears the burden of showing that limitations should be
included in her RFC assessment. Clarification of Rules Involving
Residual Functional Capacity Assessments, 68 Fed. Reg. 51153-01,
51155 (Aug. 26, 2003) (comments to final rule). Here, the ALJ found
that Plaintiff had established that she had the RFC to perform a
restricted range of sedentary work—the least-demanding exertional
level of work, *see* 20 C.F.R. § 404.1567(a), but did not establish
greater limitations. [Tr. 19-23].

The ALJ must consider the claimant's subjective complaints in
making the determination of her residual functional capacity.
Here, Plaintiff testified that her feet were constantly numb, that
she felt like she was walking on a bed of hot coals, and that she

could stand or walk no more than two to three minutes before needing to sit down, could sit no more than 20 to 30 minutes, and could lift no more than five pounds. [Tr. 55-57, 61-62]. Yet the ALJ gave several well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as she claimed. *See* [Tr. 20-22]. "[C]ourts generally defer to an ALJ's credibility determination because '[t]he opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing is invaluable, and should not be discarded lightly.'" *Keeton v. Comm'r of Soc. Sec.,* 583 F. App'x 515, 531 (6th Cir. 2014).

The ALJ found that objective medical evidence was inconsistent with Plaintiff's reported symptoms. [Tr. 22]; *see* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."). The ALJ found that, inconsistent with Plaintiff's reported inability to walk more than two to three minutes at a time, "her gait and station remained normal throughout most of the relevant period." [Tr. 22]; *see also* Tr. 757, 962, 1046, 1037, 1029].

Next, the ALJ found that Plaintiff's noncompliance with treatment advice called her symptoms into question. [Tr. 22]; *see also* 20 C.F.R. § 404.1529(c)(4) (ALJ considers inconsistencies in the evidence when evaluating symptoms). The ALJ found that Plaintiff had "remained noncompliant with the recommendations for a healthy diet and losing weight, despite the fact that her foot specialist and endocrinologist have both advised her numerous times that her weight is exacerbating her symptoms." [Tr. 22]; *see also* [Tr. 738 ("She needs to watch her diet closer and try to lose some modest weight.")]; [Tr. 737 ("Says she's been eating more . . . and she's gained some weight.")]; [Tr. 765 ("Regular moderate exercise and a healthy diet was recommended.")]; [Tr. 813 ("I advised the patient a high-fiber diet, cut down carbs [would] control her diabetes better . . . .")]; [Tr. 868 ("She needs to lose weight.")]; [Tr. 1030 ("Encourage diabetic diet, more activity and losing weight.")]; [Tr. 1059 (noting Plaintiff's "high carb diet and weight gain")]. The ALJ reasonably considered this noncompliance as part of her evaluation of Plaintiff's symptoms. *Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014) (unpublished) ("Blaim's . . . persistent disregard of his doctors' advice, moreover, suggested that his conditions were not as severe as he made them out to be.").

The ALJ also found that the effectiveness of Plaintiff's conservative treatment was inconsistent with her reported

symptoms. [Tr. 22 ("Her treatment has remained very conservative and the record indicates that she is doing well with these treatment measures.")]; *see also* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ considers the type and effectiveness of treatment when evaluating symptoms); SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the . . . extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). Although Dr. Jensen-Stanley referenced the possibility of surgery for Plaintiff's feet several times, it does not appear that Plaintiff's condition ever reached the point where surgery was warranted. *See* [Tr. 703 ("Surgical options were mentioned briefly for completeness sake to make sure the patient was aware that surgery was an option, but only after all conservative options have failed.")]; [Tr. 1009 ("The custom device is utilized in an attempt to avoid the need for surgery.")]. And Plaintiff reported that orthotics, special shoes, and full contact casts effectively treated her foot pain. *See* [Tr. 790 ("The patient then walked 50 feet with the orthosis and noted little or no pressure on the bottom of the foot, reduced pain and improved stability. The patient was pleased with the comfort of her new shoe and the offloading of the right foot/ankle.")].

11

Finally, the ALJ found that Plaintiff's daily activities were not as limited as one might expect, given her claims of extreme symptoms. [Tr. 22]; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ considers a claimant's activities when evaluating symptoms). Indeed, Plaintiff testified that she had a driver's license and drove twice per week; cooked full meals; cleaned her home; did laundry; and went grocery shopping. [Tr. 52, 57-58]. Her testimony was consistent with her prior reports to the agency, in which she admitted that she did dishes, prepared full meals, cleaned the home, did laundry, drove a car, and went grocery shopping. [Tr. 426-29, 468-71]. If Plaintiff's feet were as painful as she claimed, it seems unlikely that she could operate the accelerator and brake pedals in her car, or that she could stand or walk long enough to do dishes, prepare full meals, clean her home, do her laundry, or go grocery shopping.

Plaintiff argues that the ALJ did not sufficiently address her medication side effects or visual limitations in the RFC assessment. [DE 16, at 12]. Beginning with the latter, Plaintiff's argument is curious given that her providers recorded 20/20 vision and recommended only over-the-counter or prescription reading glasses. [Tr. 19 (the ALJ recognized that "[a]ll . . . eye exams . . . were unremarkable or within normal limits")]; *see also* [Tr. 679 (20/20 visual acuity); Tr. 809 (same), Tr. 994 (same), Tr. 989 (same)]. Although Plaintiff experienced burst blood vessels in the

back of her eyes in late 2018, she responded well to laser treatment and denied any changes in vision in early 2019. *See* [Tr. 1080, 1083].

An ALJ must consider every medical opinion when assessing a disability claimant's RFC. *See* 20 C.F.R. § 404.1527.  There were three disparate opinions relevant to Plaintiff's abilities before the ALJ:

> • Reviewing physician Dr. Whitman opined that Plaintiff had abilities consistent with a restricted range of sedentary work, [Tr. 83-86];

> • Reviewing physician Dr. Irlandez opined that Plaintiff had abilities consistent with a restricted range of sedentary work, [Tr. 115-19]; and

> • Podiatrist Dr. Jensen-Stanley opined that Plaintiff needed to elevate her legs above chest level and could walk only short distances. [Tr. 817]. The ALJ was tasked with resolving the conflicts between these opinions. *See* 20 C.F.R. § 404.1527; *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

The ALJ gave significant weight to Dr. Whitman's opinion, greater weight to Dr. Irlandez's opinion, and some weight to Dr. Jensen-Stanley's opinions. [Tr. 22-23]. The ALJ then assessed an RFC consistent with Dr. Irlandez's opinion. [Compare Tr. 19-20 with Tr. 115-19]. Although the opinion of a treating source is "[g]enerally" given more weight than the opinion of a reviewing source," 20 C.F.R. § 404.1527(c)(2), an ALJ may give more weight to the opinions of reviewing sources "if their opinions are

supported by the evidence." *Hoskins v.Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) (unpublished). As such, "[i]n appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating . . . sources." SSR 96-6p, 1996 WL 374180, at *3. The ALJ found that Dr. Jensen-Stanley's opinions were "not fully consistent with or supported by the objective medical evidence discussed above." [Tr. 23]; *see also* 20 C.F.R. 404.1527(c)(4) (ALJ considers whether an opinion is consistent with the record as a whole).

As discussed above in relation to Plaintiff's symptoms, the ALJ considered the findings of normal gait in the record—inconsistent with Dr. Jensen-Stanley's opinion that she needed to avoid weight-bearing and ambulation. [Tr. 22]; *see also* [Tr. 757, 962, 1046, 1037, 1029]. The ALJ also contrasted Dr. Jensen-Stanley's opinion that Plaintiff needed to elevate her legs regularly to control edema with the fact that the doctor did not observe any edema on the day she rendered her opinion. [Tr. 23]; [Compare Tr. 817 with Tr. 816]. Although Plaintiff accuses the ALJ of "cherry-picking" the record, the fact remains that, while Dr. Jensen-Stanley recorded edema on occasion, she more often did not record any edema. [Compare Tr. 727, 723, 720, 805, 802, 799, 793, 788, 785, 782, 779 (exams showing edema) with Tr. 693, 688, 776, 772, 769, 764, 816, 1020, 1017, 1013, 1008, 1005, 1002, 999, 996,

1094 (exams not showing any edema)]. Other providers likewise often recorded no edema. *See* [Tr. 738, 744, 876, 742, 814].

An ALJ can discount or reject any medical opinion—including the opinion of a treating physician so long as she provides good reasons supported by substantial evidence for doing so. *See* 20 C.F.R. § 404.1527(c); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). As the Supreme Court reiterated in *Biestek,* "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in the Social Security disability context. 139 S. Ct. at 1154. Here, more than a mere scintilla of evidence supports the ALJ's evaluation of Dr. Jensen-Stanley's opinion.

The ALJ referenced Plaintiff's obesity repeatedly in her decision. She found it was a "severe" impairment at step two. [Tr. 19]. She recognized that there is no listing for obesity but affirmatively stated that she had considered Plaintiff's obesity in finding that her conditions did not meet or medically equal a listing at step three. [Tr. 19]. And she found that Plaintiff's obesity was relevant to Plaintiff's RFC limitation to sedentary work, noting her providers' advice to lose weight because her obesity exacerbated her symptoms. [Tr. 22].

Here, unlike the cases cited by Plaintiff, the ALJ did far more than mention obesity in passing. Moreover, the ALJ limited Plaintiff's RFC consistent with the opinion of Dr. Irlandez, who

explicitly considered Plaintiff's obesity in his opinion of her limitations. *See* [Tr. 117-19]; *Cf. Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 443 (6th Cir. 2010) (unpublished) (under the prior SSR, finding that an ALJ sufficiently addresses a claimant's obesity so long as she credits "RFCs from physicians who explicitly accounted for [the claimant's] obesity"); *see also Caldwell v. Berryhill*, No. CV 6:12-253-DCR, 2017 WL 957538, at *6 (E.D. Ky. Mar. 10, 2017) (unpublished) (rejecting the claimant's argument that the ALJ did not sufficiently consider obesity: "Further, all of the medical evidence the ALJ relied upon necessarily took Caldwell's obesity into consideration").

## IV. CONCLUSION

In sum, more than the requisite "mere scintilla" of evidence supports the ALJ's evaluation of the evidence in this case. While Plaintiff may wish that the ALJ had weighed the evidence differently, the limited question for the Court is whether the ALJ's interpretation of the evidence was one of reasonable interpretation, even if it would not be Plaintiff's, or even the Court's, interpretation of the evidence. *See Tyra*, 896 F.2d at 1028. The ALJ's analysis here readily clears this low hurdle, and the Court shall affirm.

Accordingly,

**IT IS ORDERED** as follows:

(1) The Commissioner's final decision is **AFFIRMED**;

16

(2) The Commissioner's Motion for Summary Judgment [DE 20] is **GRANTED;**

(3) Plaintiff's Motion for Summary Judgment [DE 16] is **DENIED;** and

(4) A separate judgment in conformity herewith shall this date be entered.

This 16th day of August, 2021.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge